UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-62041-BLOOM

GEDEON JOSEPH,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Petitioner Gedeon Joseph's ("Petitioner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. [1] ("Motion"). The Government filed a Response to the Motion, ECF No. [6] ("Response"), with a supporting exhibit, ECF No. [6-1]. Petitioner also submitted an untimely Reply. ECF No. [15] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.  BACKGROUND

Petitioner, who is presently incarcerated at the Federal Correctional Institution in Glenville, West Virginia, asks the Court to vacate, set aside, or correct his sentence. *See generally* ECF No. [1]. The Court construes Petitioner's Motion liberally due to his *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

    *a.*    ***The Indictment***.

The Indictment charged Petitioner with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); substantive Hobbs Act robbery, in violation of 18

U.S.C. § 1951(a) (Count Two); and knowingly possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and brandishing the firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three). CR-ECF No. [1] at 1-3.[1] The Indictment specified that the § 924(c) violation in Count Three was premised upon the substantive Hobbs Act robbery violation in Count Two. *Id.* at 3.

      b.     *Petitioner's Guilty Plea*.

On April 23, 2019, Petitioner entered into a Plea Agreement with the Government. CR-ECF No. [39]. Petitioner agreed to plead guilty to conspiracy to commit Hobbs Act robbery (Count One) and knowingly possessing and brandishing a firearm in furtherance of a crime of violence (Count Three). *Id.* ¶ 1. In exchange, the Government agreed to recommend at sentencing that the District Court reduce by two levels Petitioner's sentencing guideline level for timely acceptance of responsibility; and after sentencing, to seek dismissal of the substantive Hobbs Act robbery (Count Two). *Id.* ¶¶ 2, 8. All parties signed the Plea Agreement. *Id.* at 6.

In his Plea Agreement, Petitioner acknowledged that in exchange for the Government's undertakings, he waived his appellate rights conferred under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 except where the sentence imposed exceeded statutory maximums or was the result of an upward departure or variance. *Id.* ¶ 11. Petitioner agreed to the waiver of all rights to assert any claim that the statutes to which he pled guilty were unconstitutional or that the admitted conduct did not fall within the scope of the statutes of conviction. *Id.* ¶ 12. Petitioner agreed to a joint request that the Court enter a specific finding that the appellate waiver was knowing and voluntary. *Id.* ¶ 13.

At Petitioner's change-of-plea hearing, the Court engaged in a thorough plea colloquy with

---

[1] References to docket entries in Petitioner's criminal case, No. 19-cr-60055, are denoted as "CR-ECF No."

Petitioner. *See* CR-ECF No. [98]. The Court went over the elements of the offenses, *id.* at 9; reviewed the written Plea Agreement with Petitioner, *id.* at 8-11; identified all the constitutional rights Petitioner waived, including the partial waiver of appellate rights except as to a sentence that exceeds the statutory maximum or is the result of an upward departure or upward variance from the sentencing guideline range, *id.* at 13-15; ascertained acknowledgment from Petitioner of the Factual Proffer's accuracy, *id.* at 15-16; explained the sentencing process and confirmed with Petitioner that trial counsel discussed with him the applicable Sentencing Guidelines, *id.* at 12-14; established that, prior to signing each document, trial counsel reviewed with Petitioner the Factual Proffer and Plea Agreement and that they had an opportunity to discuss the contents therein, *id.* at 8-9, 15; and received confirmation that Petitioner had a full opportunity to discuss his case in general and any defenses, and that he was satisfied with the representation trial counsel had provided, *id.* at 8.

The Court verified that Petitioner was not under the influence of drugs or alcohol at the time of his plea colloquy. *Id.* at 4. Petitioner confirmed that he discussed the appeal waiver with his trial attorney and agreed with the Court's entry of a specific finding that his appellate waiver was knowing and voluntary. *Id.* at 11. Petitioner denied any coercion and denied he had been promised anything not stated in the Plea Agreement. *Id.* at 11-12.

Petitioner also signed a Factual Proffer attesting to the underlying facts of his guilty plea. *See* CR-ECF No. [38]. The Factual Proffer summarized the following relevant facts:

> On the morning of December 24, 2018, at approximately 9:00 a.m., JOSEPH, along with co-defendant Zyheem Ian Smith, entered the Yard House restaurant at the Sawgrass Mills Mall, located at 2610 Sawgrass Mills Circle, Sunrise, Florida. The Yard House restaurant chain has locations in several states and purchases foods and supplies in interstate commerce. Smith and JOSEPH were let into the restaurant by co-defendant Watverly Mortimer, a Yard House employee. Smith was armed with a tan Glock 19X semi-automatic pistol.
>
> Smith and JOSEPH went directly to the second floor of the restaurant and

3

encountered the manager, who was talking on a cellphone. Smith grabbed the cellphone out of the manager's hand. Smith pointed the pistol at the manager and ordered him to open the safe and place money into a plastic bag. Smith told the manager to empty the safe or he would shoot the manager in the leg. The manager, who was in fear for his life, placed cash into the bag, and Smith and JOSEPH left with the bag in a silver Hyundai Elantra.

Law enforcement later discovered the manager's cellphone behind the restaurant. Smith's fingerprint was found on the manager's cellphone, and based on the identification of Smith, law enforcement obtained cellphone and social media records for Smith.

Smith's cellphone records showed that on the morning of the robbery, he placed three phone calls to Mortimer. Cellsite data for Smith's cellphone showed that it traveled from the Orlando area early on December 24, 2018 and was located near the Yard House restaurant in Sunrise at the time of the robbery. Law enforcement matched other location data for Smith's phone with highway toll booth photos of a silver Hyundai Elantra in the same location at the same time, and determined that the vehicle had been rented in the Orlando area. Rental records for the vehicle showed that Mortimer rented the vehicle and gave JOSEPH and Smith as references.

A search of JOSEPH's Facebook Messenger chat sessions showed JOSEPH and Mortimer communicating in mid-December 2018 about the need for a rental car for a robbery. On January 14, 2019, Mortimer sent JOSEPH a screenshot of a text from the rental car company saying that the rental car had been returned and there was some damage to the car.

A search of Smith's Facebook Messenger chat sessions showed that in November and December of 2018, Smith, JOSEPH and Mortimer discussed committing a robbery at Mortimer's workplace, including discussions of what clothes to wear, getting a rental car to use in the robbery, and what the best date for the robbery would be. On November 2, 2018, Smith advised another individual that he had recently purchased a Glock 19X for $699.50. On December 24, 2018, just before the robbery took place, Smith and Mortimer communicated about Smith and JOSEPH waiting to enter the restaurant until after the manager had arrived so that he could open the safe.

*Id.* at 1-3.

      c.     ***United States v. Davis, the Motion to Dismiss, and the Sentencing Hearing***.

On June 24, 2019, the United States Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019). Section 924(c) criminalizes using a firearm "during and in relation to any crime of violence or drug trafficking crime[.]" 18 U.S.C. § 924(c)(1)(A). The term "crime of violence"

4

is defined by two clauses. *See id.* § 924(c)(3). First, the "elements clause" defines a crime of violence as a felony having "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" *Id.* § 924(c)(3)(A). Second, the "residual clause" includes in the crime-of-violence definition any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). The Supreme Court determined section 924(c)'s residual clause was unconstitutionally vague. *See Davis*, 139 S. Ct. at 2336.

On July 11, 2019, in light of *Davis*, Petitioner filed a Motion to Dismiss Count Three of Indictment. CR-ECF No. [59]. Petitioner argued that because Count Three depended on an invalid predicate, the conspiracy to commit Hobbs Act robbery as charged in Count One, it must be dismissed. *Id.* On July 12, 2019, the District Court denied the motion because the predicate offense for the § 924(c) charge (Count Three) as stated in the Indictment was substantive Hobbs Act robbery (Count Two), not conspiracy to commit Hobbs Act robbery (Count One). ECF No. [94] at 3; *see id.* ("The Court: The way it is they pled guilty to Count 3 with the predicate offense being the substantive Hobbs Act."). Petitioner was sentenced to a total term of imprisonment of ninety-six months, comprised of eighty-four months for Count Three and twelve months for Count One to be served consecutively, followed by a two-year term of supervised release. *Id.* at 23-24. The District Court informed Petitioner that, to the extent his right to appeal had not been waived, he was required to file any Notice of Appeal within fourteen days of the entry of judgment. *Id.* at 25; *see* CR-ECF No. [69] (Judgment).

Petitioner filed a timely appeal. CR-ECF No. [73]. He raised two arguments on appeal: first, after *Davis*, the conspiracy to commit Hobbs Act robbery charge was insufficient to support his § 924(c) conviction (Count Three); second, § 924(c)(3)'s elements clause was not severable from its residual clause, thus, *Davis* invalidated both clauses. *United States v. Joseph*, 811 F. App'x

5

595, 597 (11th Cir. 2020). On April 29, 2020, finding that it was barred by the appeal waiver in his Plea Agreement, the Eleventh Circuit dismissed Petitioner's appeal. *Id.* Because Petitioner's co-defendant, Mortimer, did not have an appellate waiver in his Plea Agreement, the Eleventh Circuit addressed Petitioner's first argument. *Id.* Even so, the Eleventh Circuit found that the Indictment specified the § 924(c) charge was predicated on the substantive Hobbs Act robbery charge (Count Two), not conspiracy to commit Hobbs Act robbery (Count One). *Id.* at 599. After review of the Factual Proffer, the Eleventh Circuit determined that, as to Mortimer, the facts established aiding and abetting a substantive Hobbs Act robbery, "allowing it to serve as the predicate for his § 924(c) charge." *Id.*

Petitioner's conviction became final on July 28, 2020, when the ninety-day period for seeking certiorari review elapsed following dismissal of his direct appeal. *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari or when the time for filing a certiorari petition expires."); Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case . . . entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." (alterations added)).

    d.    *The § 2255 Proceedings*.

On June 25, 2020,[2] Petitioner filed his first Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. *Joseph v. United States*, No. 20-61370-UU (S.D. Fla. July 16, 2020), ECF No. [1]. Because the ninety-day period for filing a writ of certiorari to the United States Supreme Court had not yet expired, the Court dismissed the motion

---

[2] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations and internal quotation marks omitted).

without prejudice as premature. *Id.* at ECF No. [4].

On September 30, 2020, in a separate case, Petitioner filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. *See* ECF No. [1]. The Government filed a Response arguing that the Motion should be denied because Petitioner's claims were procedurally barred. ECF No. [6]. Petitioner requested several extensions of time to file a permissive Reply to the Government's Response, *see* ECF Nos. [7] & [9], which the Court granted, *see* ECF Nos. [8] & [14].[3] Although untimely, the Court considers Petitioner's Reply. *See* ECF No. [15]; *see also* ECF Nos. [8] & [14].

## II. LEGAL STANDARD

### a. *Section 2255 Motions*.

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (citation omitted). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of

---

[3] On June 2, 2021, the case was reassigned to the Undersigned. ECF No. [13].

justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

### b. *Ineffective Assistance of Counsel*.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 & 694 (1984); *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). To satisfy the prejudice prong, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). If a petitioner fails to establish one of the prongs under *Strickland*, the Court need not address the remaining prong. *See Strickland*, 466 U.S. at 697.

A petitioner bears the burden of proof in habeas proceedings. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008). "'There is a strong presumption that counsel's performance was reasonable and adequate.' To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).

### III. DISCUSSION

#### a. *Procedural Default and Timeliness*

The Government agrees that the Motion is timely but contends that Petitioner's claims are procedurally barred. ECF No. [6] at 7-9. The Government argues the claims are barred because both of Petitioner's claims could have been raised on direct appeal. *Id.* Petitioner challenges his trial counsel's effectiveness and the Government fails to explain why these claims of ineffective

assistance of counsel should be procedurally barred. As such, the Court finds that Petitioner's claims are not procedurally barred. *See Massaro v. United States*, 538 U.S. 500, 503 (2003) (finding there is no procedural default for failing to raise ineffective assistance of counsel claims on direct appeal).

### b. The Merits

Liberally construing the Motion, Petitioner raises one claim of ineffective assistance of counsel. ECF No. [1]. He argues he was constructively denied counsel as guaranteed by the Sixth Amendment. *Id.* at 5. He asserts two arguments supporting his claim: (1) trial counsel was ineffective for refusing to show him the discovery; and (2) trial counsel was ineffective for not making a *Davis*-based argument to the Court. *Id.* at 5, 7-9, 17-22. Petitioner claims that had it not been for trial counsel's ineffectiveness, he would not have pled guilty, and he would have proceeded to trial. *Id.* at 9. As such, Petitioner also challenges the voluntariness of his plea.

#### i. *Petitioner's Statement of Facts*.

On March 1, 2021, trial counsel was appointed to represent Petitioner. CR-ECF No. [20]. Petitioner states that trial counsel visited him three times prior to his April 23, 2019 change-of-plea hearing. ECF No. [1] at 5, 7-8, 17-19. Petitioner states that at the first visit, prior to the March 6, 2019 pre-trial detention hearing, trial counsel informed him of the charges pending against him, the sentencing guideline range, and told Petitioner that if he wanted to go to trial, he would prepare a defense. *Id.* at 5, 17. Trial counsel told Petitioner there was a "lack of evidence" but that after the pre-trial detention hearing they could discuss trial strategy and discuss the possibility of cooperating with the Government for a sentence reduction. *Id.* at 5, 17-18.

Trial counsel visited Petitioner two more times following the pre-trial detention hearing at which the Government's motion to detain Petitioner pre-trial was granted. *Id.* at 7, 18-19; *see also* CR-ECF No. [25]. Trial counsel told Petitioner the Government's case was based on the physical

9

description given by the eyewitness, but that the eyewitness "could not possibly identify anyone." *Id.* at 7, 18. He also told Petitioner that the basis for the conspiracy charge was text messages discussing plans for committing the robbery. ECF No. [1] at 18. Trial counsel told Petitioner that "there was no defense that could be used to help [his] case." *Id.* at 7, 18. Trial counsel then told Petitioner about the plea offer: in return for a guilty plea to Counts One and Three, the Government would dismiss Count Two. *Id.* at 7, 19. Petitioner alleges that at both visits he asked to see the Government's evidence but trial counsel told him he only had one copy but that he would make extra copies before the change-of-plea hearing. *Id.* at 7, 19-20. Based on the Government's "overwhelming evidence," trial counsel advised Petitioner he should take the plea offer. *Id.* at 19.

On April 23, 2021, the morning of the change-of-plea hearing, Petitioner asked trial counsel for a third time to see the discovery before entering the courtroom. *Id.* at 8, 20. Trial counsel told him it was "too late," but he would show him the discovery packet after the change-of-plea hearing. *Id.* at 8, 20. Following the change-of-plea hearing, Petitioner states that he spoke to trial counsel on two occasions and requested to see the discovery and inquired about withdrawing his plea and going to trial. *Id.* at 8, 20. Trial counsel told him he would get to see the discovery but that he could not withdraw his plea. *Id.* at 8, 20

On July 12, 2019, at the sentencing hearing, Petitioner states that he questioned trial counsel about *Davis*, but trial counsel "pretended to be ignorant of the case[.]" *Id.* at 8, 20-21. Trial counsel never presented any arguments during sentencing about how *Davis* would affect his case. *Id.* at 8, 21. Following the sentencing hearing, trial counsel represented Petitioner on his appeal. *Id.* Petitioner again requested the discovery, but trial counsel continued to delay granting the request "until after the appeal was filed." *Id.* at 9, 21.

Petitioner avers that had trial counsel either showed him the discovery or informed him about *Davis* and how it affected his § 924(c)(1)(A) charge, he would not have entered a plea of guilty and would have insisted on going to trial. *Id.*

### ii. *Voluntariness of Plea*.

Petitioner alleges that he would not have entered a plea of guilty had it not been for trial counsel's ineffectiveness. *Id.* He suggests that had he seen the discovery or had he been aware of the *Davis* decision, he would have exercised his trial rights. *Id.* Liberally construing the Motion, Petitioner implies that his plea was not knowing or voluntary.

"The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997) (citation and internal quotation marks omitted). Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary, knowing, and intelligence act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). To be knowing and voluntary: (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted). "Because such a waiver is valid only if made intelligently and voluntarily, an accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) (citation omitted).

Petitioner's plea was knowing and voluntary. The District Court conducted a thorough Rule 11 colloquy ensuring that Petitioner entered his guilty plea free from coercion, that he understood

11

the nature of the charges, and that he understood the consequences of his plea. ECF No. [98] at 8-16; *see also Patti v. United States*, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." (citation omitted)). Where, as here, Petitioner made statements under oath during a change-of-plea colloquy, courts apply a "strong presumption" that those statements are true; conversely, Petitioner bears a "heavy burden "to show his statements were false." *United States v. Caldwell*, 805 F. App'x 743, 746 (11th Cir. 2020) (per curiam) (citations omitted).

Petitioner's claim that trial counsel withheld discovery from him is conclusory. He does not point to any specific evidence that trial counsel withheld from him. In fact, Petitioner goes into detail regarding his discussions with trial counsel about the evidence against him. Trial counsel told him there was an eyewitness who could not positively identify him but that described his physical attributes. ECF No. [1] at 7, 18. Trial counsel also discussed with him "text messages . . . which talked about committing a robbery." *Id.* at 18. Trial counsel described the evidence against Petitioner as "overwhelming." *Id.* at 19.

Review of the record reflects that Petitioner was aware of more of the Government's evidence against him. At the pre-trial detention hearing, the Government adopted FBI Agent Jessie Apaza's criminal affidavit along with his testimony on direct examination. CR-ECF No. [23]; *see also* CR-ECF No. [25] at 3. The Government proffered Facebook conversations between Petitioner and the co-defendants discussing plans to rent a car in preparation for the robbery and photographs of the Petitioner from his Instagram account wearing black and white Nike sneakers that matched the "distinct black and white Nike shoes seen in the Yard house security video." CR-ECF No. [25] at 5; *see also* CR-ECF No. [24] (Government's exhibit list).

Of highest import, Petitioner confirmed with the District Court that he had a "full opportunity to discuss his case" with his trial counsel including discussing his "case in general and

any defenses" that he might have. CR-ECF No. [98] at 8. Petitioner swore under oath that he had "[n]o complaints." *Id.* Critically, these admissions came directly after the District Court postponed co-defendant Mortimer's change-of-plea hearing after Mortimer complained that his trial counsel had not "gone over any of the evidence" with him. *Id.* at 5-8.

Petitioner's claim that trial counsel failed to inform him about the *Davis* decision is belied by the record. The Supreme Court decided *Davis* on June 24, 2019, two months after Petitioner's change-of-plea hearing. More so, following the *Davis* decision, but prior to sentencing, trial counsel filed a motion to dismiss the § 924(c) charge (Count Three) in the Indictment on the basis that it relied on an invalid predicate offense. CR-ECF No. [59]; *see also* CR-ECF No. [94] at 3 (denying the motion to dismiss because the language of the Indictment states that substantive Hobbs Act robbery was the predicate offense).

Petitioner has not shown that trial counsel's performance was deficient. Nor has he shown that his guilty plea was involuntary. Thus, he is not entitled to relief. *See Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824-25 (11th Cir. 2015).

    *iii.*    **Constructive Denial of Counsel**.

Petitioner was not denied constructive counsel under the Sixth Amendment. The Supreme Court has recognized that with regard to proving *Strickland* prejudice certain circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 659 (1984). Under *Cronic*, prejudice may only be presumed

> where, and only where: (1) there is a 'complete denial of counsel' at a 'critical stage' of the trial, (2) 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) under the 'circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair.'

*Castillo v. Fla. Sec'y of Dep't of Corr.*, 722 F.3d 1281, 1286 (11th Cir. 2013) (quoting *Cronic*, 466 U.S. at 659-61). The *Cronic* presumption of prejudice "applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Stano v. Dugger*, 921 F.2d 1125, 1153 (11th Cir. 1991) (en banc). Under the first exception, "prejudice may be presumed where counsel is either entirely absent from, or was prevented from assisting the accused during, a critical stage of the trial." *Castillo*, 722 F.3d at 1287.

Petitioner does not articulate any basis under *Cronic* to constitute a complete denial of counsel. Under *Cronic*'s first exception, Petitioner's claim completely fails to meet the high bar for relief. To the contrary, trial counsel represented Petitioner at all critical stages: the pre-trial detention hearing, *see* CR-ECF No. [23], the change-of-plea hearing, *see* CR-ECF No. [98], and the sentencing hearing, *see* CR-ECF No. [94].

Nor can Petitioner show that trial counsel failed to subject the Government's case to meaningful adversarial testing. *See Castillo*, 722 F.3d at 1287 (finding that relief under *Cronic*'s second exception should be reserved for "situations in which counsel entirely failed to function as the client's advocate by failing to meaningfully oppose the prosecution's case." (citations and internal quotation marks omitted)). For one, at the pre-trial detention hearing, trial counsel cross-examined the Government's witness. CR-ECF No. [23]. Additionally, on April 3, 2021, trial counsel filed a motion to dismiss the Indictment on the ground that Hobbs Act Robbery, 18 U.S.C. § 1951(a), was unconstitutional on its face and as applied. CR-ECF No. [29]. The District Court denied the motion on both grounds. CR-ECF No. [31].

Petitioner's own allegations contradict his claim that he was constructively denied counsel. Less than two months separated Petitioner's arraignment and the change-of-plea hearing, yet Petitioner describes three visits with trial counsel wherein trial counsel described the charges and

evidence against him, explained the sentencing guidelines, and discussed the Government's plea offer. ECF No. [1] at 5, 7, 17-20. Thus, Petitioner has not met his burden of proof to show that any errors trial counsel made were "so egregious" as to constructively deny him the right to counsel. Petitioner is not entitled to relief.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the petitioner has the burden to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record. Indeed, because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" he is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, they must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where, as here, the district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the

Case No. 20-cv-62041-BLOOM

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Upon consideration of the record, the Court concludes that no certificate of appealability shall issue.

### VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Gedeon Joseph's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, **ECF No. [1]**, is **DENIED**.

2. No certificate of appealability shall issue.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 31, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Gedeon Joseph
#71698-018
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 6000
Glenville, WV 26351
PRO SE